*179 ORDER (Granting Defendants’ Motion to Dismiss)
TODD R. MATHA, Associate Judge.
INTRODUCTION
The Court must determine whether to grant the defendants’ motion to dismiss. The institutional defendant retains sovereign immunity from suit, whereas the individual defendants retain no continuing official authority. The Court, therefore, cannot redress the plaintiffs’ alleged harm, and consequently enters a dismissal without prejudice.
PROCEDURAL HISTORY
The plaintiffs, Timothy G. Whiteagle and Gretchen Eagleman, initiated the current action by filing a Complaint for Declaratory Judgments (hereinafter Complaint) with the Court on January 16, 2004. Consequently, the Court issued a Summons, accompanied by the Complaint, on January 19, 2004, and delivered the documents by personal service to the defendants’ representative, the Ho-Chunk Nation Department of Justice (hereinafter DOJ).[1] See HCN R. Civ. P. 5(C)(1). The Summons informed the defendants of the right to file an Answer within twenty (20) days of the issuance of the Summons pursuant to HCN R. Civ. P. 5(A)(2). The Summons also cautioned the defendants that a default judgment could result from failure to file within the prescribed time period.
The defendants, by and through DOJ Attorney Michael P. Murphy, timely filed the Defendants’ Arrnver on February 9, 2004. The Court then set a Scheduling Conference for March 16, 2004 at 3:00 p.m. CST, and mailed Notice(s) of Hearing to the parties on February 13, 2004. The following parties attended the Scheduling Conference: Attorney Tracey L. Schwalbe, plaintiffs’ counsel (by telephone), and DOJ Attorney Michael P. Murphy, defendants’ counsel.[2] The Court entered the Schedul *180 ing Order on March 19, 2004, setting forth the timelines and procedures to which the parties should adhere prior to Trial.[3]
On May 13, 2004, the plaintiffs filed their Amended Complaint The Court entered its Order (Responsive Pleading Deadline) on May 14, 2004, in order to inform the defendants of their right to respond. The Court also issued a Summons on the same date, providing the DOJ the opportunity to accept or decline representation of the added defendant, the Ho-Chunk Nation General Council Planning Committee (hereinafter GCPC).
The defendants, by and through Attorney Mark L. Goodman, timely filed the Answer to Amended Complaint on May 14, 2004. The defendants also filed a Motion to Dismiss accompanied by the required memorandum of law (hereinafter Defendants’ Brief). See HCN R. Civ. P. 18. In response, the Court entered the May 17, 2004 Order (Motion Hearing). The order informed the parties of the Court’s decision to convene a motion hearing for the purpose of entertaining the Motion to Dismiss. The order set forth the date, time and location of the Motion Hearing, which the Court scheduled in conjunction with the Pre-Trial Conference, and alerted the plaintiffs to their legal rights and obligations in relation to the proceeding.
Prior to the hearing, the Court received the timely May 26, 2004 Plaintiffs’ Brief in Opposition to Defendants’ Motion to Dismiss. See HCN R. Civ. P. 19(B). The Court convened the Pre-Trial Conference/Motion Hearing on May 27, 2004 at 1:30 p.m. CDT. The following parties appeared at the Conference/Hearing: Timothy G. Whiteagle, plaintiff; Attorney Tracey L. Schwalbe, plaintiffs’ counsel; Attorney Mark L. Goodman, individual defendants’ counsel; and DOJ Attorney Michael P. Murphy, GCPC counsel.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. II—Membership
Sec. 5. Membership Code. The Legislature shall have the power to enact laws not inconsistent with this Article to govern membership. Removal of any person who is not eligible for membership from the Membership Roll shall be done in accordance with the Membership Code, provided, that such removal is approved by at least a two-thirds (2/3) vote of the General Council.
Sec. 6. Appeals. Any person who has been rejected for enrollment or who has been removed from the tribal roll shall have the right to appeal to the Judiciary for a remedy in equity consistent with this Constitution.
Art. IV—General Council
Sec. 1. Powers of the General Council. The People of the Ho-Chunk Nation here *181 by grant all inherent sovereign powers to the General Council. All eligible voters of the Ho-Chunk Nation are entitled to participate in the General Council.
Sec. 3. Powers Retained by the General Council.
(a) The General Council retains the power to set policy for the Nation.
(b) The General Council retains the power to review and reverse actions of the Legislature except those enumerated in Section 4 of this Article. The General Council shall return such reversals to the Legislature for reconsideration consistent with the action of the General Council. The General Council retains the power to review and reverse decisions of the Judiciary which interpret actions of the Legislature. The General Council does not retain the power to review and reverse decisions of the Judiciary which interpret this Constitution.
(c) The General Council retains the power to propose amendments in accordance with Article XIII, including those which reverse decisions of the Judiciary interpreting this Constitution.
(d) The General Council retains the power to establish its own procedures in accordance with this Constitution.
(e) The General Council retains the power to call a Special Election.
(i) Actions by the General Council shall be binding.
Sec. 4. Excepted Powers. The General Council does not retain the power to review actions relating to the hiring or firing of personnel.
Sec. 5. Annual Meetings. The People shall meet in General Council at least one time each year, which shall be called by the President and at other times as provided in Section 6 of this Article. Notice shall be provided by the President for all Annual Meetings of the General Council.
Sec. 7. Procedures. Twenty (20) percent of the eligible voters of the Nation present in General Council shall constitute a quorum. Each action of the General Council shall require the presence of a quorum. The President shall call all Annual and Special General Council Meetings, except those meetings called pursuant to Article IX, Section 2. When a quorum is attained, the General Council shall select either the President or another person to conduct the meeting. A secretary shall be appointed to record the minutes of an [sic ] General Council meetings, including any votes taken. The secretary shall transmit the minutes of General CouncU meetings to the Legislature.
Art. V—Legislature
Sec. 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
Art. VI—Executive
Sec. 2. Powers of the President. The President shall have the power:
(1) To execute, administer, and enforce the laws of the Ho-Chunk Nation necessary to exercise all powers delegated by the General Council and the Legislature, including but not limited to the foregoing list of powers.
Art. VII—Judiciary
Sec. 4. Powers of the Judiciary. The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judiciary shall have the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.
Sec. 5. Jurisdiction of the Judiciary.
*182 (a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6. Powers of the Tribal Court
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachments and mandamus.
(b) The Trial Court shall have the power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with this Constitution.
Sec. 7. Poioers of the Supreme Court
(b) The Supreme Court shall have the power to establish written rules for the Judiciary, including qualifications to practice before the Ho-Chunk courts, provided such rules are consistent with the laws of the Ho-Chunk Nation.
Art. VIII—Elections
Sec. 2. Special Elections. Special Elections shall be held when called for by the General Council, the Legislature, or by this Constitution or appropriate ordinances. In all Special Elections, notice shall be provided to the voters.
Sec. 5. Eligible Voters. Any member of the Ho-Chunk Nation who is at least eighteen (18) years old and who meets all other requirements established by the Ho-Chunk Nation shall be eligible to vote.
Art. IX—Removal, Recall and Vacancies
Sec. 1. General Council Removal, of Legislators. The General Council may remove any member of the Legislature for malfeasance. No vote by the General Council to remove a member of the Legislature shall take place before such Legislator has been given reasonable notice of the impending action and has had a reasonable opportunity to be heard.
Sec. 2. General Council Removal of the President. The General Council may remove the President for malfeasance. No vote by the General Council to remove the President shall take place before such President has been given reasonable notice of the impending action and has had a reasonable opportunity to be heard.
Sec. 5. Recall by General Council. The President, Legislators, and Members of the Judiciary shall be removable by recall vote at a Special Election requested by the General Council. At the request of the General Council, the Election Board shall hold a Special Election not less than thirty (30) days and not more than ninety (90) days from the date of the General Council request. If the Election Board fails to hold such Special Election within ninety (90) days, any eligible voter of the Nation may request the Tribal Court to order such Special Election. In any Special Election, no more than three (3) persons shall be subject to recall vote.
Art. XII—Sovereign Immunity
Sec. 1. Immunity of Nation from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials or employees of the Ho-Chunk Nation acting within the scope *183 oí their duties or authority shall be immune from suit.
Sec. 2. Suit Against Officials and Employees. Officials or employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing rights and duties established by this constitution or other applicable laws.
Art. XIII—Amendments
Sec. 2. Requests for a Secretarial Election. It shall be the duty of the Secretary of the Interior to call and hold an election on any proposed amendment to this Constitution at the request of two thirds (2/3) of the entire Legislature, at the request of the General Council, or upon presentation of a petition by thirty (30) percent of the eligible voters of the Ho-Chunk Nation.
DEPARTMENT OF ADMINISTRATION ESTABLISHMENT AND ORGANIZATION ACT OF 2001 (1 HCC § 2)
Sec. 3. Mission. The Ho-Chunk Nation Department of Administration shall provide the support services and staff necessary for effective operation of the Executive, Legislative, Judicial, and General Council Branches of government. In doing so, the Department shall safeguard the interests of the Nation, enhance the sovereignty of the Nation, and exercise stewardship over those resources committed to it by the Nation and foreign jurisdictions.
Sec. 4. Functions. The Department of Administration shall:
e. Provide technical support for all areas of the Nation’s operations.
Sec. 5. Internal Organization.
c. The Department shall maintain a current Organizational Chart. The Organizational Chart shall accompany its annual budget submission and any budget modifications during the fiscal year in accordance with the Nation’s Appropriations and Budget Process Act.
HO-CHUNK NATION PLANNING COMMITTEE ESTABLISHMENT ACT (1 HCC § 15)[4]
Subsec. 2. Purpose. This Act establishes and organizes a Planning Committee to *184 assist the Offiee of the President with the logistical and administrative planning of a duly called General Council Meeting.
Subsec. 3. Power. The Planning Committee shall be vested solely with the singular power to plan and prepare for Annual and Special Meetings of the General Council.
Subsec. 4. Functions.
a. Once the President announces the date, time, and loeation/site of a duly called General Council Meeting, the Planning Committee shall make the necessary arrangements at that location, i.e., room reservations, food preparation, seating, clean-up, and any further preparation deemed necessary for the planning of a General Council.
b. The General Council, upon reaching the necessary quorum of twenty (20) percent shall establish the General Council agenda. The Planning Committee has no independent authority to set the General Council agenda and no authority to change the location of the General Council without the consent of the President.
Subsec. 7. Meetings.
c. The Planning Committee shall only conduct meetings after the President has determined a date, time, and location/site for the General Council.
d. The time period that the Planning Committee can exercise its authority is upon the announcement by the President of a General Council Meeting, but not more than the 45-day period immediately prior to the date of the General Council Meeting, and the 30-day period immediately after that General Council Meeting. During this period the Committee shall plan, prepare for, and facilitate the General Council and to reconcile Committee finances.
Subsee. 9. General Council. The role of the Planning Committee during the conduct of a General Council shall be limited to ensuring that the logistics and administrative support is provided for as planned.
HO-CHUNK NATION RULES OF JUDICIAL ETHICS
Sec. 4-2. Conflict of Interest/Recusal.
C. At the judge or justice’s discretion, if there is a fact or issue which may require a disclosure to prevent the appearance of impropriety, that information must be disclosed to the parties. If the parties do not respond in the form of a Motion for Recu-sal, there is no basis for the judge or justice to recuse.

Comment: A judge or justice may discern that certain facts or information should be provided to the parties in a case to avoid an appearance of impropriety. Examples are extended family relationships, attorney-client relationships, working relation - ships and situations which may raise an appearance of impropriety.

HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 5. Notice of Service of Process.
(A) Definitions.
(2) Summons—The official notice to the party informing him/her that he/she is identified as a party to an action or is being sued, that an Answer is due in twenty (20) calendar days (See HCN R. Civ. P. 6) and that a Default Judgment may be entered against them if they do not file an Answer in the prescribed time. It shall also include the name and location of the Court, the case number, and the names of the parties. The Summons shall be issued by the Clerk *185 of Court and shall be served with a copy of the filed Complaint attached.
(C) Methods of Service of Process
(1) Personal Service. The required papers are delivered to the party in person by the bailiff, or when authorized by the Court, a law enforcement officer from any jurisdiction, or any other person not a party to the action who is eighteen (18) years of age or older and of suitable discretion.
Rule 18. Types of Motions.
Motions are requests directed to the Court and must be in writing except for those made at trial. Motions based on factual matters shall be supported by affidavits, references to other documents, testimony, exhibits or other material already in the Court record. Motions based on legal matters shall contain or be supported by a legal memorandum, which states the issues and legal basis relied on by the moving party. The Motions referenced within these rules shall not be considered exhaustive of the Motions available to litigants.
Rule 19. Filing and Responding to Motions.
(B) Responses. A Response to a written Motion must be filed at least one (1) day before the hearing. If no hearing is scheduled, the Response must be filed with the Court and served on the other parties within ten (10) calendar days of the date the Motion was filed. The party filing the Motion must file any Reply within three (3) calendar days.
Rule 27. The Nation as a Party.
(B) Civil Actions. When the Nation is filing a civil suit, a writ of mandamus, or the Nation is named as a party, the Complaint should identify the unit of government, enterprise or name of the official or employee involved. The Complaint, in the case of an official or employee being sued, should indicate whether the official or employee is being sued in his or her individual or official capacity. Service can be made on the Ho-Chunk Nation Department of Justice and will be considered proper unless otherwise indicated by these rules, successive rules of the Ho-Chunk Nation Court, or Ho-Chunk Nation Law.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity which prevented a party from receiving a fair trial or a substantial legal error which affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an *186 appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. Alter the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Reissuance of Judgment. Clerical errors in a court record, including the Judgment, or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; or (2) fraud, misrepresentation or serious misconduct of another party to the action; or (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii); did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time. Rule 60. Emergency Order, Temporary Restraining Order and Ex Parte Temporary Restraining Order.
(A) Emergency Order. The Court may enter an Emergency Older without a hearing if it appears from the Complaint, affidavits and sworn testimony that irreparable harm will result without the Order. The Order will expire in thirty (30) calendar days unless extended by the Court for good cause. A hearing on the matters contained in the Order will be held prior to its expiration. The removal of a child from its residence by the Department of Social Services or equivalent agency and the imminent destruction of records or property essential to the case are examples of matters whieh may require an Emergency Order.
(B) Temporary Restraining Order. When it appears from a party’s pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure the party, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act.
Rule 61. Appeals.
Any final Judgment or Older of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the HCN Rules of Appellate Procedure.
*187 RELEVANT LAW
UNITED STATES CODE OF FEDERAL REGULATIONS
Tit. 25—Indians; Ch. 1—Bureau of Indian Affairs, Department of the Interior
Subch. F—Tribal Government; Pt. 81— Tribal Reorganization under a Federal Statute
See. 81.4. Assistance from the Department of the Interior.
Representatives of the Department of the Interior will cooperate with and offer advice and assistance (including the proposing of amendments), to any tribe in drafting a constitution and bylaws, an amendment, a charter or charter amendment, or in revocation of constitutions. Any payments that might be necessary to non-Bureau staff assisting in the conduct of the election shall be made from tribal funds.
Sec. 81.5. Request to Call Election.
(d) The Secretary shall authorize the calling of an election on the adoption of amendments to a constitution and bylaws or a charter when requested pursuant to the amendment article of those documents. The election shall be conducted as prescribed in this part unless the amendment article of the constitution and bylaws or the charter provides otherwise, in which case the provisions of those documents shall rule where applicable.
(f) Any authorization not acted upon within 90 days (tribes in Alaska shall be granted 120 days) from the date of issuance will be considered void. Notification of the election date as provided for in § 81,14 shall constitute the action envisioned in this section. Extension of an authorization may be granted upon a valid and reasonable request from the election board. Copies of authorizations shall be furnished the requesting tribe or petitioners.
(g) In those instances where conflicting proposals to amend a single constitutional or charter provision are submitted, that proposal first received by the officer in charge, if found valid, shall be placed before the voters before any consideration is given other proposals. Other proposals shall be considered in order of their receipt; provided, they are resubmitted following final action on the initial submission. This procedure shall also apply in those instances where new or revised constitutions are at issue.
Sec. 81.22. Contesting of Election Results.
Any qualified voter, within three days following the posting of the results of an election, may challenge the election results by filing with the Secretary through the officer in charge the grounds for the challenge, together with substantiating evidence. If in the opinion of the Secretary, the objections are valid and warrant a recount or new election, the Secretary shall order a recount or a new election. The results of the recount or new election shall be final.
FINDINGS OF FACT
1. The parties received proper notice of the May 27, 2004 Pre-Trial Conference/Motion Hearing.
2. The plaintiff, Timothy G. Whiteagle, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A002569, and resides at 4929 Kappus Drive, Eau Claire, WI 54701. The plaintiff, Gretehen Eagle-man, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A00077I, and resides at 649 Elm Street, Black River Falls, WI 54615.
*188 3. The defendant, Alvin Cloud, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A000365. The October 11, 2003 General Council selected Mr. Cloud as its Chairperson.. Gen. Council Mins. (Qct. 11, 2003) at 1; see also Const., ART. IV, § 7. The defendant, Roberta R. Fun-maker, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A000917. Mr. Cloud appointed Ms. Funmaker as the General Council Secretary. Id.
4. The defendant, GCPC, is a duly constituted entity of the Ho-Chunk Nation. See supra note 4, at 183-84. As of October 11, 2003, the following enrolled members of the Ho-Chunk Nation comprised the GCPC: Ervin Funmaker, Tribal ID# 439A002930 (Dist. I Rep.); David A. Hanson, Tribal ID# 439A001185 (Dist. II Rep.); Wayne Funmaker, Tribal ID# 439A000928 (Dist. Ill Rep.); Roberta R. Funmaker, Tribal ID# 439A000917 (Dist. IV Rep.); and Rosetta R. Hunt, Tribal ID# 439A002126 (Dist. V Rep.). Defs.’ Ex. M (Defs.’ Resp. to Pis.’ Inter-rogs. & Req. for Prod. Of Docs.) at 2.
5. In 1997, Ho-Chunk Nation Management & Information Services (hereinafter MIS) assisted with facilitating the voting process and tabulating the ballots taken at the January 11, 1997 Special General Council Meeting. Gen. Council Mins. (Jan. 11, 1997), Ex. A(l). MIS is a division within the Ho-Chunk Nation Department of Administration located on trust lands at W9814 Airport Road, Black River Falls, WI 54615. See Dep’t of Admin. Establishment & Org. Act of 2001, § 2(5)(e); http:// www.ho-chunknation.eom/government/ exeeutive/org_ehart.htm (last visited July 19, 2004) (on file with Admin. Dep’t).
6. In 2000, MIS facilitated the voting process by electronic means at the October 21, 2000 Annual General Council Meeting, registering each vote on six (6) substantive issues after discussion of the relevant resolutions. An average number of 1,140 participants voted on each resolution, requiring an average of forty (40) minutes for each vote.[5] Gen. Council Mins. (Oct. 21, 2000) at 3-7. After completing the second resolution, Charles H. Davis, Tribal ID# 439A000446, inquired whether MIS could conduct simultaneous voting on the remaining resolutions. Id. at 4. MIS personnel responded in the negative. Id. at 5.
7. In 2001, MIS was prepared to facilitate the voting process by electronic means at the October 27, 2001 Annual General Council Meeting, but only conducted electronic voting on two (2) of fifteen (15) substantive issues.[6] Gen. Council Mins. (Oct. 27, 2001) at 3-10. After completing the electronic vote on the first resolution, Chairperson Long inquired of the General Council whether the voting should continue by electronic or other means. “[AJpproximately 25 [adult tribal members] raised their hand[s]” in favor of electronic voting, whereas an overwhelming majority favored utilizing hand votes. Id. at 3. Consequently, Secretary Karen L. Martin, Tribal ID# 439A002220, repeatedly made the following notation throughout the recorded minutes: Note: Secretary cannot certify the authenticity of hand *189 votes cast[7] Id. at 3-10 (emphasis in original).
8. In 2002, MIS facilitated the voting process by electronic means at the November 16, 2002 Annual General Council Meeting. At the beginning of the meeting, Chairperson Alvin Cloud, Tribal ID# 439A000365, introduced an MIS representative “who outlined the voting process.” Gem. Council Mins. (Nov. 16, 2002) at 1. Participating members cast electronic votes on all substantive issues following the presentation of the final resolution. At the conclusion of the meeting, Gloria J. Visintin, Tribal ID# 439A003116, “ma[de] a motion that the Ho-Chunk 2002 General Council adjourn when the final vote is cast and members can then receive their $100.00.” Id. at 3. Emma M. Snowball, Tribal ID# 439A000528, seconded the motion, which passed upon a unanimous hand vote. Id.
9. On October 11, 2003, the General Council convened its Annual Meeting at the Ho-Chunk Hotel & Convention Center located in Baraboo, WI. The General Council achieved the constitutionally required quorum of “[t]wenty (20) percent of the eligible voters of the Nation,” Const., Abt. IV, § 7, 920 adult tribal members, at or around 12:28 p.m. CST. Gen. Council Mins. (Oct. 11, 2003) at 1; see also Const., Art. VIII, § 5.
10. Prior to the Annual Meeting, the GCPC performed its function of “assist[ing] the Office of the President with ... logistical and administrative planning.” GCPC Establishment Act, § 15(2). The GCPC entered into contractual arrangements for the following services: maintenance, security, childcare and provision of drum group. Defs.’ Ex. A-D (HCN Sen. Provider Agreement(s)).
11. According to MIS, 1,611 adult tribal members registered at the Annual Meeting. Gen. Council Mins, at 12. MIS facilitated the voting process by electronic means, and provided attendees with instructions detailing registration and voting. Defs.’ Ex. I. Tribal members registered by swiping newly issued tribal identification cards through devices located at quorum tracking workstations, which also monitored the presence of quorum in the meeting by tracking ingress and egress. Id. Security personnel performed this latter function in the upper meeting room, which opened to accommodate an unanticipated number of attendees. Defs.’ Ex. M at 4-5.
*190 12.The MIS instructions included the following explanation of the voting methodology:
a. Once Quorum is met, the (General Council meeting in officially in session. Each resolution will be discussed, the voting worksheet circled according to your Vote preference, then the next Resolution will be discussed and voted upon, until all Resolutions have been discussed and the voting worksheet completed.
b. After all the Resolutions have been discussed and the voting worksheet has been completed, automated voting on all Resolutions will open at the voting booth workstations.
c. Tribal members will only be able to use the voting workstations along the East wall, with the Elders allowed at any voting workstation, and only the Elders at the North wall voting workstations.[8]
d. You will swipe your new Tribal ID card at the voting booth workstation, which will enable the voting options. Using your pre-recorded votes, from the voting worksheet, you will click each corresponding Resolution number, your choice and the “Vote” button.
e. When done voting on the voting computer workstation, turn in your hand ballot at the designated collection box. Hand ballots are stored in a sealed container.
f. Once done with all your automated votes, you will proceed to the payout workstations. Here, you will swipe your Tribal ID card to confirm that you have already voted, sign a roster with your payroll signature to acknowledge receipt and receive your $100.00 in cash.
Defs.’ Ex. I (emphasis in original; numerical designations modified).
13. Following discussion of twenty-six (26) resolutions, Ronald K. Decorah, Tribal ID# 439A000563, “made a motion [at or around 4:50 p.m. CST] that the 2003 Ho-Chunk Nation General Council Annual Meeting adjourn when the final vote is cast[J and members can receive their $100.00.” Gen. Council Mins, at 11. Timothy W. Hanson, Tribal ID # 439A001218, seconded the motion, which passed upon a unanimous hand vote. Id.
14. Tribal members were permitted to leave the meeting area upon receipt of the $100.00 payment. Defs. ’ Br. at 3.
15. The final vote cast at the Annual Meeting occurred at or around 8:47 p.m. CST, nearly four (4) hours after voting began. Gen. Council Mins, at 12. Neither Chairperson Cloud nor Secretary Funmaker oversaw the casting or tabulation of votes. Defs. ’ Br. at 4.
16. MIS posted the voting results of the Annual Meeting at the tribal website approximately eighteen (18) hours after the conclusion of voting. Id. at 3; see also http:// www.ho-chunknation.com/ government/ gc/ge_results_2003. htm (last visited July 19, 2004).
17. Secretary Funmaker completed the certification section of each resolution sometime after the publication of the vote tallies. Gen. Council Res. 10-11-03A-Z.
18. The General Council adopted twenty-three (23) resolutions purportedly in accordance with its reserved powers as illustrated below.
a. For example, the following resolution appears to implicate the General Council’s ability to establish binding policy. Const., Aet. IV, § 3(a, f); see also *191 HCN Op. Att’y Gen. 10-29-03 at 2 (noting that the resolution constitutes a “[pjolicy requiring enactment of law”).[9]
la. Gloria J. Visintin, Tribal ID# 439A003316, presented a resolution, which includes the substantive statement
that the General Council of the Ho-Chunk Nation pursuant to its constitutional authority, does hereby mandate the Legislature of the Ho-Chunk Nation to appropriate a per cap increase of one thousand ($1,000.00) dollars to the current amount of three thousand ($3,000.00) dollars in accordance with the Nation’s Per Cap Ordinance, making a total of four thousand ($4,000.00) dollars in each individual per cap distribution. This mandate will be effective immediately and will be applied to the next per capita distribution on February 1, 2004.
Gen. Council Res. 10-11-03A.[10]
b. For example, the following resolution appears to implicate the General Council’s ability to review and reverse legislative actions with the condition that the General Council “return such reversals to the Legislature for reconsideration consistent with the action of the General Council.” Const., Aet. IV, § 3(b); see also HCN Op. Att’y Gen. 10-29-03 at 3 (noting that the General Council action “[r]equires amendments and enactment of law to take effect”).
la. David A. Hanson, Tribal ID# 439A001185, presented a resolution, which includes the substantive statement
that the General Council hereby REVERSES the Act of the Legislature of February 13, 2001—Ho-Chunk Nation Planning Committee Establishment Act[,] ... returning] such reversal to the Legislature for reconsideration consistent with the action of the General Council[, and requiring] ... that the following language repeal and replace the language of the Act of the Legislature of February 13, 2001 and incorporated accordingly into the Ho-Chunk Code[.]
Gen. Council Res. 10-11-03E (emphasis in original).[11]
*192 c. For example, the following resolution appears to implicate the General Council’s ability to propose constitutional amendments. Const., Aet. IV, § 3(c); see also HCN Op. Att’y Gen. 10-29-03 at 4 (noting that “[t]he resolution calls for a Secretarial Election”).
la. Demetrio D. Abangan, Tribal ID# 439A000001, presented a resolution, which includes the substantive statement “that [t]he Ho-Chunk Nation General Council hereby approves for a Secretarial Election an amendment to the Ho-Chunk Nation Constitution, Article VI, Section 2(m), [t]o veto actions of the Legislature^ and that i]t shall require a two-thirds vote of the entire Legislature to override a veto by the President.” Gen. Council Res. 10-11-03G.[12]
d. For example, the following resolution appears to implicate the General Council’s ability to call a Special Election for the purpose of effectuating a removal or recall of an elected official. Const., Aets. IV, § 3(e), VIII, § 2, IX, §§ 1-2, 5; see also HCN Op. Att’y Gen. 10-29-03 at 3 (noting that the removal constituted an “[a]ct of the General Council [that] took effect upon the vote[, but] may be subject to challenge ... ”).
la. Parmenton T. Decorah, Tribal ID# 439A000620, presented a resolution, which includes the substantive statement “[tjhat the Ho-Chunk Nation Legislator, District I, Clarence Pierre Petti-bone be removed from the Office of Legislator of the Ho-Chunk Nation, on this day of Saturday, October 11, 2003[, and that] ... the General Council does hereby call for a Special Election to fill the vacated Office of Ho-Chunk Legislator District I.” Gen. Council Res. 10—11— 03F.[13]
19. The plaintiffs presented no evidence whatsoever that any of the defendants sanctioned the voting methodology.
20. The plaintiffs presented no evidence whatsoever that any attendee objected to the proposed voting methodology at the General Council Annual Meeting, including the plaintiffs.
21. The plaintiffs presented no evidence whatsoever that any attendee requested discussion on the final motion at the General Council Annual Meeting, including the plaintiffs.
*193 DECISION
In a recent decision, the Court granted the defendants’ motion to dismiss since the plaintiff failed to name a proper party. Ronald K. Kirkwood v. HCN Hous. Dep’t et al., CV 03-62, 5 Am. Tribal Law 151, 2004 WL 5595381 (HCN Tr. Ct., Jan. 26, 2004). The Court emphasized that within this jurisdiction “the naming of parties to a suit [is] an important exercise.” Id. at 11, at 158 (citations omitted). Apart from informing the Court’s assumption of personal jurisdiction, the Court examines issues relating to justiciability and sovereign immunity on the basis of the named litigants.
In Kirkwood, the named defendants retained sovereign immunity as sub-entities of the Ho-Chunk Nation. Id. at 10-12, at 157-59. The Court granted a dismissal since the plaintiff failed to satisfactorily amend his pleading prior to the deadline to do so. Id. at 11, at 158. The Court, however, dismissed the case without prejudice because “the Court would have arguably exercised subject matter jurisdiction over the dispute but for the improper nam-fag of parties.” Kirkwood, CV 03-62 (HCN Tr. Ct., Feb. 20, 2004) at 5. Since the dismissal, the plaintiff has re-filed the matter, and the case is scheduled for trial on September 24, 2004. Kirkwood v. Francis Decorah, in his official capacity as Dir. of HCN Horn. Dept. et al., CV 04-33 (HCN Tr. Ct.).
The Court has identified similar shortcomings within the instant case. To begin, the GCPC maintains sovereign immunity from suit unless expressly waived by the Legislature. Const., Art. XII, § 1; see also Chloris A Lowe, Jr. v. HCN Legislature et al., CV 97-12 (HCN Tr. Ct., Mar. 21,1997) at 14, affd, SU 97-01 (HCN S.Ct, June 12, 1997). The Court realizes that the defendants identified the GCPC as a potential proper party within their responsive pleading, but this holds no legal significance. Defs. ’ Answer at 6. The defendants have no duty to offer assistance to the plaintiffs in this regard. In any event, the Court dismisses the suit against the GCPC on the basis of sovereign immunity.[14]
*194 The Court now turns to the causes of action directed against the remaining defendants. In 2001, the Legislature initiated an action against the Chairperson and Secretary of the October 21, 2000 Annual General Council Meeting. The Legislature asked the Court to determine whether the General Council possessed the authority to mandate a specific appropriation of funds. HCN Legislature, CV 01-11 (HCN Tr. Ct., June 22, 2001) at 7-8. The Court, however, dismissed the matter due to the absence of a justiciable case or controversy. Id. at 14—16. The Court held that the plaintiff did not present a ripe cause of action, meaning that the plaintiff needed first to affirmatively act upon the disputed General Council resolution by either codifying or refusing to codify its terms into law. Id. at 15. In addition, the Court held that the defendants retained “no duty that the Court c[ould] affect by a ruling!,] and therefore the Court ha[d] no ability to order any relief to the plaintiff through those parties.” Id. at 16.
Essentially, the Court determined that it could not “prevent [the defendants] by injunction, or otherwise, from doing that which [they] ha[d] no right to do because it [wa]s unconstitutional or illegal.” Id. at 15. The Court explained:
[t]he acts of Robert Funmaker and Darcy FunmakerRave as officials of the General Council of October 21, 2000 have been completed. They have no more official acts to do. By the completion of the General Council minutes and the transmission of those minutes to the HCN Legislature they have completed their actions as officers of the General Council. The Court can achieve nothing to redress the alleged wrongs through either official. Therefore there is also a lack of redressability of the plaintiffs alleged harms.
Id. Upon reconsideration of the above judgment, the Court reiterated that because neither the Chairperson nor Secretary retained “authority to carry out the alleged unconstitutional acts of the General Council ... [, the Court] could not undo the alleged harm because the Court could not order the officers to undo the harm.” HCN Legislature, CV 01-11 (HCN Tr. Ct., July 24, 2001) at 3.
Merging the concepts of ripeness and redressability together, the Court concluded that if it could not “redress the harm by ordering the parties to act or not to act, the case [wa]s not ripe.” Id. The Court recognized that
[w]hile it is true that the Court may issue declaratory judgments, it may do so only where there is a real case and controversy, where there are parties who have standing, and where the issues are ripe for a decision and the Court can actually redress the harm of the plaintiff.
Id. at 4. In HCN Legislature, like the case at bar, the plaintiff requested relief only in the form of declaratory judgments and not injunctions. Compl. for Declaratory J., CV 01-11 (Jan. 19, 2001) at 6-7. Despite this fact, the Court performed an Ex Parte Young-type analysis of the claims in order to determine whether it could effectively *195 grant injunctive relief against the named defendants. HCN Legislature, CV 01-11 (HCN Tr. Ct., June 22, 2001) at 11-14. For the reasons identified below, this manner of analysis remains appropriate. See Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
The Court has long recognized that the CONSTITUTION incorporates the legal fiction pronounced in Ex Parte Young. See e.g., Lowe, Jr., CV 97-12 (HCN Tr. Ct., Mar. 21, 1997) at 14-18 (citing Const., Art. XII, § 2). A plaintiff may receive “declaratory and non-monetary injunctive relief,” provided that he or she can establish that an individual tribal official or employee has “act[ed] beyond the scope of their duties or authority.” Const., Art. XII, § 2. The Court does not grant declaratory judgments as stand alone forms of relief, but rather declares the proper interpretation or application of law as an inevitable consequence of most case filings. See id., Art. VII, §§ 4, 6(a).
Federal and state courts likewise refrained from granting declaratory judgments prior to the passage of the Declaratory Judgment Act of 1934,[15] and state adoption of the Uniform Declaratory Judgments Act promulgated in 1921.[16] See Pub. Serv. Comm’n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 242, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Both acts served as legislative responses to the Ex Parte Young decision.[17] On one hand, state officials decried the authority of a “single federal judge to grant ex parte interlocutory injunctions against the enforcement of state statutes.” [18] Steffel v. Thompson, 415 U.S. 452, 465, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). On the other hand, plaintiffs expressed dissatisfaction with the prospect of *196 needing to establish irreparable harm in order to test the constitutionality of state statutes through the mechanism of a preliminary injunction.[19] Id. at 466, 94 S.Ct. 1209.
In the tribal context, the former justification relating to federalism concerns is wholly irrelevant. The latter justification does not hold the same potency since the Court has primarily, and infrequently, utilized preliminary injunctions as tools to forestall impending elections. See e.g., Gerald L. Cleveland, Dist. IV Legislator v. President/Chairman for Gen. Council Mt’g of Oct. 11, 2003, et al, CV 03-75 (HCN Tr. Ct., Oct. 10, 2003); Coalition for Fair Gov’t II, CV 99-22 (HCN Tr. Ct., May 21, 1996); see also HCN R. Civ. P. 60(A-B). The Court remains unaware of any discontentment with the equitable remedies available to litigants within this jurisdiction. Regardless, neither the Ho-Chunk Nation Supreme Court nor the Legislature has authorized the issuance of declaratory judgments.[20] See Const., ARts. V, § 2(a), VII, § 7(b).
Therefore, the Court must dismiss the instant suit on identical grounds set forth in HCN Legislature. The official functions of Chairperson Cloud and Secretary Funmaker have long since ended, and the Court cannot redress the plaintiffs’ alleged harm through such parties. The Court has no ability to enjoin the actions of the named individual defendants in any respect.
Assuming arguendo that the Ho-Chunk Nation had an enabling act permitting the Court to grant declaratory judgments, the plaintiffs would still need to present a justiciable cause of action. See e.g., United Pub. Workers of Am. v. Mitchell, 330 U.S. 75, 88, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 324-25, 56 S.Ct. 466, 80 L.Ed. 688 (1936); Loy v. Bunderson, 107 Wis.2d 400, 410-11, 320 N.W.2d 175 (Wis.1982) (declining to relax justiciability requirement in declaratory judgment actions). In order to satisfy this prerequisite, the Court would require that the plaintiffs establish standing. The adopted test for determining the existence of standing is comprised of three (3) elements: “a plaintiff must ‘ “show that he[/ she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,” and that the injury “fairly can be traced to the challenged action” and “is likely to be redressed by a favorable decision];.]” ’ ” Clarence Pettibone v. HCN Legislature et al., CV 01-84, 4 Am. Tribal Law 330, 2002 WL 34432649 (HCN Tr. Ct., May 15, 2002) at 10 (citations omitted); see *197 also Daniel W. Green v. Real Estate Manager, Home Ownership Program, in his official capacity, CV 00-108, 4 Am. Tribal Law 830, 336-89, 2002 WL 34432647 (HCN Tr. Ct., Dec. 31, 2002) at 9-12. This test derives from the presence of the constitutional Case or Controversy Clause. Const., Art. VII, § 5(a).
Underlying the test is the basic notion that “‘the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.’ ” Pettibone, CV01-84 at 10 (quoting Data Processing Serv. v. Camp, 397 U.S. 150, 151-52, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The Court will not adjudicate a matter that does not seek to define “ ‘the legal relations of parties having adverse legal interests.’ ” Pub. Serv. Comm’n of Utah, 344 U.S. at 242, 73 S.Ct. 236 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). Furthermore, “[t]he disagreement must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.” Pub. Serv. Comm’n of Utah, 344 U.S. at 244, 73 S.Ct. 236.
As noted above, the case at bar is quite simply not between adversaries. The individual defendants likely hold no greater interest in the resolution of the issues presented than any other eligible voter, and the inability of the Court to provide adequate redress leaves the plaintiffs without standing. The Court also speculates whether the plaintiffs can articulate an actual or threatened injury, but the Court does not need to resolve this issue for purposes of deciding this matter. See Pettibone, CV 01-84 at 9-26.
BASED UPON THE FOREGOING, the Court grants the defendants’ motion, and dismisses the instant action without prejudice. The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure (hereinafter HCN R.App. P.), specifically [HCN R.App. P,], Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within thirty (30) calendar days after the day such judgment or order was rendered, file with the [Supreme Court] Clerk of Court, a Notice of Appeal from such judgment or order, together with a filing fee of thirty-five dollars' ($35 U.S.).” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.l” HCN R. Civ. P. 61.

. The Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.) permit the Court to serve the initial pleading upon the DOJ when the plaintiff/petitioner names as a party either a unit of government or enterprise or an official or employee being sued in their official or individual capacity. HCN R. Civ. P. 27(B).

. Attorney Murphy informed the Court that his office intended to secure outside counsel. Attorney Mark L. Goodman, to defend the suit, but that the DOJ would enter a limited appearance for purposes of scheduling the case. Scheduling Conference (LPER at I, Mar. 16, 2004, 03:00:39 CST).

. The presiding judge made two (2) discretionary disclosures as encouraged by applicable ethical rules. HCN Judicial R. of Ethics, § 4-2(C). First, the judge informed the parties that his spouse is the second cousin (higak) of defendant Roberta Funmaker. Scheduling Conference(LPER at 1-2, 03:01:00 CST). Second, the judge informed the parties that he attended the October 11, 2003 Annual General Council Meeting in his individual capacity as an enrolled tribal member. Id. at 2, 03:03:29 CST. The judge further related that he abstained from voting at the meeting and delivered no public comments. Id.; see also Jacob Lonetree v. Robert Funmaker, Jr. et at, SU 00-16 (HCN S.Ct., Jan. 12, 2001) at 1-2 (asserting that members of the Judiciary are not required to forego constitutionally protected rights as tribal members). Neither party responded by filing a motion for recu-sal. HCN Judicial R. of Ethics, § 4-2(C).

. At its October 21, 2000 Annual Meeting, the General Council adopted a resolution for the apparent purpose of establishing a policy whereby the GCPC, as then comprised, would continue to serve its "traditional function[ ]” of "arranging the annual [and] special General Council meetings.” Gen. Council Res. 10-21-00A; see also Const., Art. IV, § 3(a). Prior to this action, the Ho-Chunk Nation Legislature (hereinafter Legislature) drafted the HCN Planning Comm. Establishment Act (hereinafter GCPC Establishment Act), and posted it for public comment until October 23, 2000. GCPC Establishment Act, § 15 at 4. The Legislature enacted the GCPC Establishment Act on February 13, 2001. Id. Subsequently, Matthew J. Mullen, Tribal ID# 439A003208, proposed a resolution to reverse the GCPC Emau-ushment Act at the October 27, 2001 Annual General Council Meeting in order to increase GCPC membership to its earlier level as recognized in Gen, Council Res, 10-21-00A. Gen. Council Meeting Mins. (Oct. 27, 2001) at 6; see also Const., Art. IV, § 3(b). The resolution failed due to lack of quorum, id. Most recently, David A. Hanson, Tribal ID# 439A001185, proposed a similar resolution to reverse the GCPC Establishment Act at the October 11, 2003 Annual General Council Meeting. Gen, Council Res. 10-11-03E. The General Council passed this resolution, which also purports to "replace the language of the Act of the Legislature of February 13, 2001” with an amended version that vests substantially greater authority in the GCPC. Id. at 2. For example, the GCPC would maintain power to “carry! 1 out directives of the General Council” and "assist the President” in his or her “executfion], administration], and en-forcefinent of] the laws of the Ho-Chunk Nation.” Id. at 3-4 (referencing Const., Art. VI, § !(/)). As of the entrance of this order, the *184 Legislature has not rescinded the GCPG Es-TABL1SHMENT Ad.

. For purposes of the above calculations, the Court considers the two (2) resolutions pertaining to ineligible tribal member removal as one (1) action since voted upon simultaneously. Gen. Council Mins, at 5.

. Chairperson Douglas Long, Tribal ID# 439A003243, interrupted roll call ‘‘jajfter conferring with [DOJ Attorneys] Wendy Hel-gemo and Wendi Huling" and informed the General Council "that by using the electronic voting system, we would be able to ensure that quorum is maintained." Gen. Council Mins, at 2.

. Pertaining to voting, the Court earlier pronounced that “Ltjo be granted a presumption of validity, a body politic must follow procedural guidelines which are easily understandable and subject to verification. It is not necessary that they be the same each time, but that the procedures be clear and hopefully have some ability to be easily verified.” Coalition for Fair Gov’t II et al. v. Chloris A. Lowe, Jr. et al., CV 96-22, -24, 1 Am. Tribal Law 145, 166-67, 1997 WL 34676286 (HCN Tr. Ct., Jan. 3, 1997) at 29. The Court equated vote verification with consistent counting of affirmative and negative votes and abstentions, focusing on the need to confirm total votes cast. Id. at 36-38, at 171-73. The Court also stressed the need for neutrality in voting methodology. Id. at 36, 41, at 171-72, 174-75. The Court deliberately declined to either prescribe or sanction a particular form of voting for substantive issues, but did not object to using voice votes "for minor procedural items.” Id. at 42, at 175. Instead, the Court reiterated that "[ujnless procedures are changed, so that substantial decisions of the General Council can be objectively verified, the resulting disbelief that such votes were valid and the instability accompanying such disbelief will undermine the strength and unity of the Ho-Chunk Nation.” Id. at 45, at 177. The Court, however, never discredited the use of hand votes, and neither the Court nor the Constitution places a duty upon the presiding Secretary to independently certify or verify the authenticity of vote tallies. See Const., Art. IV, § 7.

. MIS personnel supervised at least sixteen (16) computer voting stations, including four (4) stations dedicated to the elders and disabled. Defs.’ Ex. H (GC 2003 Duty Stations), J (Gen. Council 2003 Layout).

.At the Pre-Trial Conference/Motion Hearing, the GCPC asserted that the issuance of an Attorney General opinion arguably resolved the ripeness concern noted in an earlier case. LPER at 13, May 27, 2004, 02:27:30 CDT (citing HCN Legislature v. HCN Gen. Council et al., CV 01-11 (HCN Tr. Ct., July 24, 2001) at 4-5). The Court does not join in this assessment of dicta contained in the earlier opinion. In that case, the Court characterized the suit as one in which the “Legislature [was] asking for an advisory opinion.” HCN Legislature, CV 01-11 at 4. The Court suggested that the plaintiff could seek such an opinion from the Attorney General, but the entrance of an opinion would not, in and of itself, render a matter justiciable. The Court clearly stated that a suit could only follow after the Legislature decides to act in conformance with or in contradiction to a hypothetical Attorney General opinion. Id.

. The parties directed the Court's attention to this resolution as an instance where the Legislature later embodied the policy in law. LPER at 17-18, 02:46:01 CDT; see also Const., Art. V, § 2(a). In actuality, the Legislature increased the quarterly per capita distribution from $3,000.00 to $3,250.00 prior to the Annual General Council Meeting. Leg. Res. 06-18-03 H. The issue of whether the General Council possesses the authority to establish expenditure levels remains unresolved. HCN Legislature, CV 01-11, 3 Am. Tribal Law 393, 2001 WL 36153849 (HCN Tr. Ct., June 22, 2001).

. As earlier noted, the Legislature has not rescinded the GCPC Establishment Act. Supra note 4, at 183-84. The Court shall not speculate about the reason(s) for such inaction. However, the General Council did adopt a contemporaneous resolution, which appears to conflict, in some respects, with the pro *192 posed changes to the GCPC Establishment Act incorporated into the above resolution. See Gen. Council Res. 10-11-03L (advocating the creation of an Office of the General Council "for the purpose of enforcing the wishes of the General Council”). The tribal newsletter published job descriptions for the Office of General Council prior to the Annual General Council Meeting in response to a previous General Council resolution that also purportedly created the Office of General Council. Office of Gen. Council, Hocak Worak, Feb. 12, 2003, at 7 (quoting Gen. Council Res. 10-27-01 F).

. As of the entrance of this order, the Secretary of the Interior has not conducted any Secretarial Elections since the adjournment of the Annual General Council Meeting. Attorney General Rebecca R. Weise identified seven (7) resolutions that requested constitutional amendments. HCN Op. Att'y Gen. 10-29-03 at 4, 7-8. The Attorney General opined that "[tjhere may exist some uncertainty as to who will send requests for election to the Secretaiy of the Interior since both the Legislature and the General Council may send the request.” Id. at 4 (citing Const., Art. XIII, § 2). Indecision on this point may explain the apparent inactivity. See 25 C.F.R. §§ 81.4, 81.5(d, f-g) (2004).

. On October 16, 2003, Legislator Pettibone filed a lawsuit challenging his removal. Clarence Pettibone v. HCN Gen. Council et al., CV 03-77 (HCN Tr. Ct.). The case remains unresolved as of the issuance of this order. The plaintiffs in the instant case included a cause of action relating to the removal in their initial pleading, but subsequently removed this issue from the litigation. Am. Compl. at 3-4; Compt. at 7-8.

. The Court previously noted that ‘‘[njaming a government official or agency, which must administer or enact the alleged unconstitutional [sic 1 or statutory provision is critical in a case in order to satisfy the HCN Const.],] Art XII, § 2’s requirement that someone be sued only for acting outside the scope of their authority.” HCN Legislature, CV 01-11, 3 Am. Tribal Law at 402-03 (HCN Tr. Ct., June 22, 2001) at 13-14 (emphasis added). The Court seemingly extended its comment to encompass agencies in an effort to rationalize an earlier injunction imposed against the Ho-Chunk Nation Election Board (hereinafter Election Board). Id. (citing Coalition for Fair Gov’t II v. Chloris A. Lowe, Jr. et al., CV 96-22 (HCN Tr. Ct., May 21, 1996)). However, when the Court granted the preliminary injunction against holding the May 22, 1996 Special Election, the Election Board was not a party defendant. The Election Board did not become a defendant until a subsequent case consolidation. Coalition for Fair Gov’t II, CV 96-22, -24 (HCN Tr. Ct., Julv 31, 1996). Prior to that time, the plaintiffs had only named the April 27, 1996 Special General Council Meeting Chairperson and Secretary. Perhaps a plaintiff could seek to enjoin a Secretary's transmission of minutes, thereby disrupting the cal! for a Special Election. See Const., Arts. IV, § 7, VIII, § 2. Unfortunately, the Secretary had transmitted the minutes to the Legislature in early-May 1996, and the tribal newsletter had posted the notice of election prior to the Court granting the preliminary injunction. Coalition for Fair Gov’t II, CV 96-22 (HCN Tr. Ct., May 21, 1996) at 2; Notice & Rules of Special Election to Vote on Vacancies of the HCN Legislature, Ho-Chunk Wo-Lduk, May 4, 1996, at 5. The Court did later grant a permanent injunction against holding the Special Election, and the Court directed such injunction against the Election Board. Coalition for Fair Gov’t II, CV 96-22, -24, 1 Am. Tribal Law 145, 177-78, 1997 WL 34676286 (HCN Tr. Ct., Jan. 3, 1997) at 46. The Court now questions the propriety of *194 this and other actions taken in the case, but the Court's order may be justified due to the fact that the defendants did not adequately assert sovereign immunity. Id. Regardless, the applicable constitutional section addresses suits against officials and employees, not agencies. Const,, Art. XII, § 2. The Court has since dismissed suits brought against the Election Board for the purpose of enjoining an election, and will not stray from this practice in the future. See Chloris Lowe, Jr. v. HCN Legislature et al., CV 00-99 (HCN Tr. Ct., Oct. 19, 2000). In the case at bar, the GCPC presented the sovereign immunity defense at the Pre-Trial Conference/Motion Hearing. LPER at 12, 02:24:44 CDT.

. The Act conferred the following discretionary authority:
[i]n a case of actual controversy within its jurisdiction, . .. any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201(a) (2004).

. The Act conferred the following discretionary authority:
[cjourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.... The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.... When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding.
Wis. Stat. § 806.04(1, 11) (2003).

. The remedial consequences of a declaratory judgment prove less onerous than a preliminary injunction, the violation of which would constitute contempt of court. Alternatively, violation of a declaratory judgment would prove inappropriate, but not contemptible. Steffel, 415 U.S. at 471, 94 S.Ct. 1209. A plaintiff typically requests a declaratory judgment in order to serve as a subsequent defense in a foreseeable action initiated by the defendant or similarly situated party. Pub. Serv. Comm’n of Utah, 344 U.S. at 248, 73 S.Ct. 236.

. In Ex Parte Young, the plaintiffs obtained a temporary restraining order from the federal district court without notice and a hearing being afforded to State of Minnesota Attorney General Edward T. Young. Ex Parte Young, 209 U.S. at 131, 28 S.Ct. 441. The district court subsequently convened a hearing, and, following presentation of proof entered a preliminary injunction against Attorney General Young, restricting the enforcement of the offending state statutes. Id. at 132, 28 S.Ct. 441.

. The Court has a well-established standard for preliminary injunctions. A plaintiff must demonstrate that "(1) no adequate remedy [exists] at law; (2) the threatened injury to the petitioner outweighs the harm of the injunction; (3) the petitioner has a reasonable likelihood of success on the meritsf;] and (4) granting the injunction serves the public interest.” HCN Election Bd. et al. v. Aurelia L. Hopinkah, SU 98-08 (HCN S.Ct., Apr. 7, 1999) at 8; see also HCN Legislature v. Chloris A. Lowe, Jr., CV 95-28 (HCN Tr. Ct., Apr. 3, 1996) at 4 (citing Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir.1992)) (recognizing presence of "irreparable harm” inquiry in foregoing test). The Court derived its test from a Seventh Circuit Court of Appeals decision, wherein the court reviewed a district court’s assessment of irreparable harm in the context of a temporary restraining order. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211, 215 (7th Cir.1993).

. The Court’s "power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with this Constitution” does not evidence a separate source of authority for granting declaratory judgments. Const., Art. VII, § 6(b). Moreover, General Council actions do not constitute laws.