*306 ORDER (Reversing and Remanding)
TODD R. MATHA, Chief Judge.
INTRODUCTION
The Court must determine whether to uphold the adjudicative decision of the Ho-Chunk Nation Tribal Employment Rights Ordinance Commission (hereinafter TERO Commission). Regrettably, the TERO Commission failed to adhere to the clear dictates of the TERO, thereby necessitating a reversal of the decision and order and a remand to the executive agency. The analysis and holding of the Court follows below.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail within the text of its May 5, 2004 Order (Setting Briefing Schedule) in which the Court also scheduled Oral Argument.[1] For purposes of this decision, the Court notes that the respondent, TERO Commission, filed the exhibits accepted at its November 24, 2003 Hearing on May 26, 2004.[2] The petitioner, Cash Systems, Inc. (hereinafter Cash Systems), by and through Attorneys Vanya S. Hogen and Colette Routel, filed its Initial Brief on July 6, 2004. The petitioner, Patricia A. Lowe-Ennis, by and through Attorney Mark L. Goodman, filed her Brief on July 7, 2004.
On August 20, 2004, the respondent submitted its Response to Plaintiffs’ Initial Briefs,[3] and the petitioners each filed reply briefs. Ms. Lowe-Ennis filed the Reply to Brief of Respondent Ho-Chunk Nation T.E.R.O. Commission on September 9, 2004, and Cash Systems filed its Reply *307 Brief of Plaintiff Cash Systems, Inc. on September 20, 2004. The Court convened Oml Argument on October 5, 2004 at 1:30 p.m. CDT. The following parties appeared at Oral Argument: Attorney Mark L. Goodman, petitioner’s counsel; Attorney Colette Routel petitioner’s counsel; and Ho-Chunk Nation Department of Justice (hereinafter DOJ) Attorney Michael P. Murphy, respondent’s counsel.[4]
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Ail. Ill—Organization of the Government
Sec. 3. Separation of Functions. No branch of government shall exercise the powers and functions delegated to another branch.
Art. IV—General Council
Sec. 1. Powers of the General Council. The People of the Ho-Chunk Nation hereby grant all inherent sovereign powers to the General Council. All eligible voters of the Ho-Chunk Nation are entitled to participate in General Council.
Sec. 2. Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Arti-ele VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Article V—Legislature
Sec. 2. Powers of the Legislature, The Legislature shall have the power:
(a) To make law's, including codes, ordinances, resolutions, and statutes;
(b) To establish Executive Departments, and to delegate legislative powers to the Executive branch to be administered by such Departments, in accordance with the law[7]; any Department established by the Legislature shall be administered by the Executive; the Legislature reserves the power to review any action taken by virtue of such delegated power;
Article VI—Executive
Sec. 2. Powers of the President. The President shall have the power:
(d) To administer all Departments, boards, and committees created by the Legislature;
(1) To execute, administer, and enforce the laws of the Ho-Chunk Nation necessary to exercise all powers delegated by the General Council and the Legislature, including but not limited to the foregoing list of powers.
Article VII—Judiciary
Sec. 4. Powers of the Judiciary. The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judi- *308 eiary shall have the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.
Sec. 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6. Powers of the Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
Sec. 7. Powers of the Supreme Court
(b) The Supreme Court shall have the power to establish written rules for the Judiciary, including qualifications to practice before the Ho-Chunk courts, provided such rules are consistent with the laws of the Ho-Chunk Nation.
HO-CHUNK NATION TRIBAL EMPLOYMENT RIGHTS ORDINANCE
Article I—Declaration of Policy
Sec. 1. Findings.
(a) The Legislature of the Ho-Chunk Nation (“Legislature”) finds that:
(1)whereas it is the public policy of the Ho-Chunk Nation to foster employment opportunities for its members and other Indian people; and,
(2) whereas it is the public policy of the Ho-Chunk Nation to protect the economic and societal interests of its members and other Indians by taking measures to eliminate employment discrimination against Indian people; and,
(3) whereas it the intent and purpose of this Ordinance to promote the employment and training of Indians, consistent with the Indian Hiring Preference requirements of Title VII of the Civil Rights Acts of 1964 (42 U.S.C.S 2000c-2(i)> as applied to any Indian, business or enterprise “on or near” an Indian reservation, and the Indian Self-Determination and Education Assistance Act (25 U.S.C. 6 450 et seq.) which requires preference be given to Indians, Indian-owned economic enterprises and Indian organizations in the administration and award of all federal contracts, subcontracts, or grants for the benefit of Indians;
Article IV—Definition of Terms
Sec. 1. Key Terms.
(f) “CORE CREW”—shall be defined as a regular, permanent employee of a contractor or subcontractor in a supervisory or other key position who performs a critical function such that the employer would likely face serious financial damage or loss if that task were assigned to a person who had not previously worked for the contractor or subcontractor.
(g) “COVERED EMPLOYER”—shall mean and include any person or entity that employs at least one employee at a job-site located on land owned by the Ho-Chunk Nation or whose employment contract for the benefit of land owned by the Ho-Chunk Nation is in the sum of one thousand dollars ($1,000.00) or more.
(k) “EMPLOYEE”—shall mean and include any currently working employee, any *309 applicant for employment, and any employee whose work has ceases as a consequence of any current labor dispute or as a result of unfair labor practices and who has secured any regular alternative and substantially equivalent employment. However, the term shall not mean and include any individual employed in the domestic sendees with any family or person at his/her home, or any individual employed by any other person who is not an “employer” under the definition contained in this chapter.
(/) “EMPLOYEE ON LAND OWNED BY THE HO-CHUNK NATION”—shall mean and include any employee who engages in or renders employment related services in excess of ten (10) hours per payroll quarter at a job site located on land owned by the Ho-Chunk Nation, but does not include periodic deliveries of goods unless the employer maintains a permanent facility on Ho-Chunk land.
(m) “EMPLOYER”—shall mean and include, but not limited to, any person partnership, corporation, or other entity who engages in commerce through compensated agents or servants, or who is hired pursuant to a contract for services for the benefit of the Ho-Chunk Nation, at a site located on land owned by the Ho-Chunk Nation; however, the term shall not include the Ho-Chunk Nation Government, the United States Government or any wholly owned government corporation, or any State or political sub-division thereof, but shall include any independent contractors and sub-contractors hired by these governmental units.
(n) “ENTITY”—shall mean and include any person, partnership, corporation, joint venture, government, governmental enterprise or any other natural or artificial person or organization.
(z) “PERSON”—shall mean and include both natural persons and artificial persons, including but not limited to, corporations, partnerships, joint ventures, sole propri-etorships, associations, unions, trusts, trustees, and agents.
(dd) “VENDOR”—shall mean any outside provider of goods or services, excluding Ho-Chunk owned businesses. This definition also excludes the vending of “crafts”: by Ho-Chunk members or nonmember Indians on land held in trust or owned by the Ho-Chunk Nation.
Article V—Applicability
This Ordinance shall apply on or near all lands presently owned, acquired in the future by the Ho-Chunk Nation, including but not limited, to land held in trust by the Federal Government for the Ho-Chunk Nation or on behalf of its enrolled tribal members, as authorized by Article I. Section 1 and Section 2 of the Constitution of the Ho-Chunk Nation.
Article VI—Scope of Indian Preference
Sec. 1. Enrolled Members.
All covered employers shall grant preference to enrolled members of the Ho-Chunk Nation over Non-Indians and Nonmember Indians in hiring, promotion, training, lay-offs and all other elements of employment.
Article VII—Indian Preference Certification
Sec. 1. Purpose.
(a) Employment, contracting, subcontracting and training opportunities shall be structured to provide for the hiring of qualified Ho-Chunk members and other Indians, thereby improving the economic opportunities for tribal members and other Indians living on or near land owned by the Ho-Chunk Nation.
Article VIII—Permit Fees
Sec. 1. Hid Permit.
*310 (a) Every covered employer, including all subcontractors but not Certified Indian-owned firms shall: pay a bid permit filing fee based upon the total bid price.
(2) For bids in excess of ten thousand dollars ($10,000.00), the bid permit-filing fee shall be two hundred fifty dollars ($250.00).
(b) The bid permit tee shall be submitted to TERO by the successful bidder prior to award of the contract.
Sec. 3. Vendors, Suppliers, Contractors.
(a) Every vendor, supplier or business contractor other than a construction contractor, with one (1) or more employees working on land owned by the Ho-Chunk Nation, shall obtain a work permit. The fee for the permit shall be two percent (2%) oí the employer’s quarterly employee gross payroll for the employees working on Ho-Chunk land.
(d) It shall be the responsibility of all covered employers to pay the required fee.
(e) The employer on a quarterly basis shall pay the fee within thirty (30) days after the end of each quarter, unless the TERO Director approves an alternate payment method.
Sec. 4. Collection.
(a) The TERO Director shall be responsible for collections of all permit fees.
(b) The TERO Director shall issue a formal notice be registered mail to the covered employer indication the specific amount due for payment of the permits, and the date of payment. The notice shall be mailed to the employer’s principal place of business.
Sec. 5. Delinquent Fees.
(a) The TERO Director shall send a notice to an employer who fails to pay the required work permit fee or whose permit fees are delinquent. The notice shall be sent registered mail to the employer s principal place of business.
(b) If the fees are not paid within five (5) working days after the notice is mailed to the covered employer, the TERO Director shall file a formal charge of noncompliance, shall schedule a hearing before the Commission, and shall inform the employer of the date and location of the hearing.
(c) Interest shall accrue at the prime rate on any unpaid fees, including the balance of fees to be paid under installment method.
Art. X—Lay-offs, Involuntary Terminations
Sec. 2. Involuntary Terminations.
(a) An enrolled Ho-Chunk member shall not be involuntarily terminated or encouraged to volunteer for termination due to decreased work load if a Non-Indian or Non member Indian remains employed in the same job position, classification or other position for which the enrolled member possesses the threshold qualifications.
(d) Nothing in this section shall prelude an employer for [sic ] terminating a Ho-Chunk member or any other employee from being laid off for cause.
Article XI—Re-employment
Sec. I. Re-employment List.
(a) The names of enrolled Ho-Chunk employees who are laid-of'f or involuntarily terminated shall be placed on a re-employment list which states the position held by the enrolled member at the time of lay-off or involuntary termination.
Article XII—Publication of Ordinance and Forms
Sec. 2. Manner of Publication, Hid Information.
*311 (a) Copies of this Ordinance and any rules, regulations or guidelines adopted by the Commission including any required forms shall be made available upon request to all covered employers, governmental agencies, wholly owned government corporations and private individuals and entities, intending to undertake projects at sites located on land owned by the Ho-Chunk Nation.
(b) The Commission shall take whatever action is deemed appropriate and necessary to ensure that all bid announcements comply with the standard bid policy and satisfy all applicable requirements of this Ordinance, and any rules, regulations or guidelines adopted by the Commission. Article XIII—Confidentiality and Reporting Requirements
Sec. 1. Covered Employers.
(a) Upon request a covered employer shall submit to the TERO Program Office such information determined by the staff necessary to ensure compliance with TERO requirements The TERO Program shall furnish all report forms to all covered employers. A covered employer may refuse to submit any information or documentation which it can demonstrate must remain confidential for valid business purposes.
Article XIV—On-site Inspections
Sec. 1. Periodic Inspections.
(a) The TERO Director shall have the right to conduct on-site inspections during the normal business hours to monitor compliance with the requirements of this Ordinance and any rules, regulations, guidelines or orders adopted by the Commission.
(b) The TERO Director shall have the right to contact any contractor, sub-contractor or employee working on the site so long as such contact does not unreasonably interfere with business operations.
Article XV—Compliance Plan
Sec. 1. Submission of Acceptable Plan.
(a) A covered employer who intends to do business at a site located on or near land owned by the Ho-Chunk Nation shall not commence the conduct of business until the employer has submitted an approved Compliance Plan with the TERO Program.
(b) The Compliance Plan shall include information relative to the time frame for completion of all registration forms, payroll report forms and any other documents required by the TERO to ensure that the employer will satisfy the requirements of this Ordinance, or any rules, regulations or guidelines adopted by the Commission.
Article XIX—Harassment
Sec. 1. Prohibited Activities.
(a) Harassment, intimidation or retaliation against any member of the TERO Program, any member of the Commission, or any employee referred by the TERO program, by any representative or agent of a covered employer, contractor, subcontractor, employee, or certified Indian-owned firm is strictly prohibited. If any person shall be found to have engaged in any prohibited conduct or activities, the TERO Director shall send a formal written warning to the covered employer or entity, with a full description of the nature of the alleged harassment, intimidation, and/or retaliation.
(b) If prohibited conduct or activities continue after a formal warning has been issued by the TERO Director, a formal hearing before the TERO Commission shall be scheduled. Such hearings shall be conducted in accordance with the rules: of procedure for hearings prescribed in this Ordinance.
*312 (c) The Commission may impose sanctions in accordance with Article XXIV of this Ordinance if it determines that such employer violated the prohibition against such conduct.
Article XXI—Tribal Employment Rights Office
Sec. 3. TERO Program; Staff Duties and Responsibilities.
(a) The staff of the TERO Program shall implement the day-to-day operations of the program, under the supervision and direction of the TERO Director, as herein set forth:
(1) To adopt a plan for dissemination of this Ordinance and any rules, regulations and guidelines adopted by the Commission, to all covered employers and to all governmental entities providing grants or entering into contracts for work to be performed at job-sites located on or near existing lands owned by the Ho-Chunk Nation;
(4) To ensure compliance by covered employers with any and all reporting requirements as prescribed by this Ordinance, and any rules, regulations or guidelines established by the Commission;
(6) To inspect any and all non-privileged information set forth in any records maintained by any covered employer for the purpose of ensuring continued compliance with the requirements of this Ordinance and any rules, regulations or guidelines set by the Commission;
(7) To conduct on-site inspections at any time during the actual business activities of any covered employer for purpose of monitoring compliance with the requirements set forth in this Ordinance, or any rules, regulations or guidelines established by the Commission and to speak with any contractor, subcontractor, employer or employee on the job site, unless such conduct unreasonably interferes with the operation of business;
(12) To require each covered employer to submit an acceptable Compliance plan before a covered employer may commence work on or near land owned by the Ho-Chunk Nation;
(16) To initiate a hearing before the Commission for a violation of any provision of the Ordinance, or any rules, regulations or guidelines adopted by the Commission;
Article XXII—Tribal Employment Rights Commission
Sec. 6. Authority of the Commission.
(a) The Commission shall be vested with the jurisdiction and authority to carry out the provisions of this Ordinance, in accordance with the policy of Indian Preference in employment and in contracting, as established by the Ho-Chunk Nation Legislature. The Commission shall be free from interference from any branch of the Ho-Chunk Nation government in carrying out their duties under this Ordinance.
(e) The Commission shall have the authority to conduct formal hearings, to issue notices and to subpoena witnesses and documents in accordance with the hearing procedures set forth in this Ordinance, and any rules, regulations or guidelines adopted hereunder.
(f) The Commission shall have the authority to interpret this Ordinance and any rule, regulations or guidelines adopted hereunder and its determination shall be final.
(g) The Commission shall have the authority to grant any relief necessary including, but not limited to, the imposition of monetary sanctions, as prescribed in this Ordinance in Article XXIV and any *313 rules, regulations or guidelines adopted by the Commission.
(h) The Commission shall have the authority to require a covered employer to take whatever corrective action deemed necessary for such employer to comply with requirements in this ordinance and any rules, regulations or guidelines adopted by the Commission.
(i) The Commission shall have the authority to take such actions and engage in such other activities consistent with the intent and purpose of this Ordinance and any rules, regulations or guidelines to achieve the objective in the policy of Indian Preference.
Article XXIII—Complaint and Hearing Procedure
Sec. 1. Complaint.
(a) Any interested person including, but not limited to, employees, contractors, subcontractors, covered employers and the TERO staff may file a written complaint with the TERO alleging that a covered Employer has violated this Ordinance or any rules, regulations or guidelines promulgated by the Commission.
(c) The complainant need not demonstrate that personal harm has been suffered as a result of the alleged non-compliance.
Sec. 3. Notice of Hearing.
(a) The Commission shall provide written notice of the hearing to the person against whom the allegation has been made, including the complainant, the TERO and all other identified person, at least seven (7) days prior to the date set for the hearing. The notice shall be sent by certified mail or personally served upon the parties if the mailing address is unknown The notice shall state the date, time and place of the hearing. In addition, such notice shall advise each party of:
(1) The nature of the hearing; and
(2) The right to be present and participate in the hearing; and
(3) The right to present witnesses, documents and records; and
(4) The right to cross-examine witnesses; and
(b) The Commission shall post notice of any meeting or hearing in a prominent noticeable place in the Ho-Chunk Nation Executive Office no less than forty-eight (48) hours prior to the meeting or healing, unless an emergency requires shorten notice and shall publish, if feasible, such notice in the Ho-Chunk Nation newspaper or newsletter, or in such other newspaper serving the relevant community. The notice shall state the date, time and place of the hearing.
Sec. 5. Hearing Guidelines.
(a) The Chairperson of the Commission or a member appointed by the Chairperson shall preside over all hearings and shall call the proceedings to order, control the presentation of evidence, the appearance of witnesses and the order of proceedings.
Sec. 7. Burden of Proof.
(a) The party alleging violation(s) of the Ordinance, or any rule, regulation or guideline adopted by the Commission shall carry the initial burden of establishing a prima facie case. If the Commission finds a prima facie case has been established, the burden to rebut the charge shall shift to the charged person or entity.
(b) Any matter in dispute must be proven by a preponderance of evidence.
Sec. 8. Subpoenas.
(a) The Commission shall have the power and discretion to subpoena identified person(s) and tangible documents on its own initiative or at the request of any person notified of a hearing. Subpoenas *314 may be issued only to compel a person to appear at a hearing before the Commission to give oral testimony or to produce tangible documents or records.
Sec. 9. Rules of Evidence and Testimony.
(a)The Commission shall not be bound by formal rules of evidence. The Commission shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant or unduly repetitious testimony. The Commission shall give effect to the rules of privilege unless such privilege is waived. Basic principles of relevancy, materiality and probative force shall govern the proof of all questions of fact. An objection to evidentiary offers and offers of proof of evidence not admitted may be made and shall be noted in the record.
(c) Any party shall have the right to present testimonial evidence on their own behalf, to call witnesses to testify and to cross-examine witnesses called by any other party. The Commission shall exercise its discretion to limit the testimony of witnesses if such testimony is argumentative and repetitive.
(e) Documentary evidence may be received in the form of authenticated copies or excepts, if the original document is not readily available. Upon request, parties shall be given an opportunity to compare the copy to the original.
(f) Each party shall be afforded adequate opportunity to rebut or offer countervailing evidence in support of their positions.
Sec. 10. Record of Hearing.
(a) All testimonial and documentary evidence offered at the hearing by any party or by the Commission itself shall be duly offered and made a part.of the record in the case.
(b) The Commission shall prepare a written transcript of the major points covered in the hearing.
Sec. 11. Decision and Order.
(a) The Decision and Order of the Commission shall set forth the factual findings and legal basis for the decision. The Commission shall render all factual and legal determinations by a majority vote of the Commission.
(c) If the Commission finds that this Ordinance or any rules, regulations or guidelines adopted by the Commission have been violated, sanctions may be imposed against the employer including but not limited to, requiring specific corrective actions to remedy any harm resulting from the non-compliance.
Article XXIV—Sanctions
Sec. 1. Imposition of Sanctions.
(a) The Commission may impose any of the following sanctions or a combination thereof, upon determination that a covered employer has failed to comply with this Ordinance, or any rules, regulation and guidelines adopted by the Commission.
(1) Levy a civil monetary fine to a maximum of one thousand dollars ($1,000) per violation with each day of non-compliance as a separate violation; and
(4) Order monetai*y or other relief necessary to compensate the Ho-Chunk Nation or any worker(s) referred by the TERO for damages resulting from the non compliance; and
(5) Require termination from employment of any individual(s) hired in contravention of any TERO requirements relative to Indian Preference in the selection and hiring of qualified Indian employees; and
(7) Order re-employment, promotion, and/or training by the covered employer of an Indian individual(s) adversely af *315 fected by the non-compliance with any TERO requirements relative to Indian Preference in employment opportunities; and
(8) Award back pay by the covered employer to any Indian individual(s) adversely affected by the non-compliance with the Indian Preference in employment requirements; and
(9) Require that a covered employer changes its policies, procedures and/or business practices to comply with any TERO requirement; and
(10) Order such other relief as the Commission determines is just and proper based upon the circumstance.
Art. XXV—Appeals Procedure
Sec. 1. Right, of Appeal.
(a) Any party aggrieved by a decision of the Commission has a right to appeal the decision.
(b) All appeals shall be brought in the Trial Court of the Ho-Chunk Nation, pursuant to the Ho-Chunk Rule of Civil Procedure.
Sec. 2. Procedu res for Appeal.
(a) Notice of Appeal shall be filed within thirty (30) days after the issuance of decision and order of the Commission. The Notice of Appeal shall contain a short and concise statement of the reason for the appeal
(b) Upon receiving the Notice of Appeal, the Commission shall have ten (10) days to prepare and transmit a record of its hearing and decision to the Trial Court.
(c) All decisions and orders of the Commission shall be in full force and effect during the pendency of an appeal, absent injunctive relief from the court.
(d) Proper deference shall be given to the administrative expertise of the Commission and to its determination of credibility.
(e)The Court shall not set aside or modify the official actions of the Commission unless it finds the actions to be arbitrary and capricious, unsupported by substantial evidence or contrary to law.
Article XXVIII—Coverage and Effectiveness
(a) This Ordinance shall be applicable to all covered employers as defined in this Ordinance, whether such person is doing business at a site located on or near land owned by the Ho-Chunk Nation at the time or subsequent to the effective date of this Ordinance.
(b) This Ordinance shall be in full force and effect as of the date of the formal approval and enactment by the Ho-Chunk Legislature
(c) This Ordinance shall apply to all contracts entered into after the Ho-Chunk Legislature passes the Ordinance. All contracts entered into prior to the effective date of this Ordinance shall continue to be governed by the previous TERO Ordinance until such time as the contract is up for renewal, at which time the contract shall be governed under this current Ordinance.
FINDINGS OF FACT
1. The parties received proper notice of the October 5, 2004 Oral Argument,
2. The petitioner, Patricia A. Lowe-Ennis, is an enrolled member of the Ho-Chunk Nation Tribal ID# 439A005881, and resides at N1275 Timm Road, Lyndon Station, WI 53944. The plaintiff was employed as a regional manager of Cash Systems.
3. The petitioner, Cash Systems, is a publicly traded company in the cash transaction processing industry dedicated solely *316 to gaming entities with principal offices located at 3201 West County Road 42, Suite 1()(>, Burnsville, MN55306. Cash Systems entered into a Service Provider Agreement with the Ho-Chunk Nation, a federally recognized Indian tribe, on May 1, 2003. TERO Commit Hr’g, Ex. (j at 11.
4. The respondent, TERO Commission, is an executive administrative agency created by the Ho-Chunk Nation Legislature (hereinafter Legislature) pursuant to its constitutional authority See Const., Aet. V, § 2(a-b); see also TERO, Aiít. XXII.
5. On November 24, 2003, the respondent conducted a hearing in response to a complaint filed by Ms. Lowe-Ennis.[5] TERO, Art. XXIII, §§ 1(a), 2(c); see also Am, Cornpl, 01-003 (Aug. 27, 2003).
6. On December 12, 2003, the respondent entered its Decision Order [sic ],[6] which granted partial relief to the complainant. Decision Order, 01-003 (TERO Comm’n, Dec. 12, 2003); see also TERO, Aet. XXIV. The complainant, Ms. Lowe-Ennis, presented the following causes of action within her Amended Complaint, and the respondent addressed these contentions as noted below.[7]
a.“Cash Systems engaged in harassment and intimidation of Lowe-Ennis, as that term [sic ] is defined by Article XIX of the TERO Ordinance” by “ordering Lowe-Ennis not to have future contact with members of the Ho-Chunk Nation Legislature.” Am. Cornpl. at 3, para. 27.
la. Respondent’s factual findings on this issue: none.
lb. Respondent’s legal basis for its decision: none.
b. “Cash Systems engaged in harassment and intimidation of Lowe-Ennis, as those terms are defined by Article XIX of the TERO Ordinance” by “withholding Lowe-Ennis’ salary.” Am. Compl. at 3, para. 28.
la. Respondent’s factual findings on this issue: none.
lb. Respondent’s legal basis for its decision: none.
c. “Cash Systems violated Article X of the TERO Ordinance” by “demanding that Lowe-Ennis either sign an employment agreement or resign.” Am. Cornpl. at 3, para. 29.
la. Respondent’s factual findings on this issue: none.
lb. Respondent’s legal basis for its decision: none.
d. “Cash Systems violated Article X of the TERO Ordinance because Lowe-Ennis was terminated without cause.” Am. Cornpl, at 3, para. 30.
la. Respondent’s factual findings on this issue: none.
lb. Respondent’s legal basis for its decision; “can not intervene on a ‘Core Crew Member’ employment termination decision that is exempt from the TERO Commission’s authority.” Decision Order at 1 (citing TERO, Art. IV, § 1(f)).[8]
*317 e. “Cash Systems violated Article XXI of the TERO Ordinance” by “requiring that a certain Tribal member be assigned work.” Am, Compl. at 3, para. 31.
la. Respondent’s factual findings on this issue: none.
lb. Respondent’s legal basis for its decision: none.
f. “Cash Systems has engaged in employment discrimination against a Ho-Chunk Tribal member,” Ms. Lowe-Ennis. Am. Compl. at 4, para. 32.
la. Respondent’s factual findings on this issue: none.
lb. Respondent’s legal basis for its decision: none.
g. “Cash Systems never paid a permit fee as required by the Ordinance before it began doing business with the Nation on June 5, 2003.” Am. Compl. at 4, para. 36.
la. Respondent’s factual findings on this issue: 1) “Cash Systems!,] Inc. received the application for TERO registration and TERO compliance plan on August 8, [20]03;” 2) “Cash Systems!,] Inc. did not return required application and compliance plan until August 28, [20]03;” 3) “Cash Systems!,] Inc. did sign a valid contract with the Ho-Chunk Nation and did agree to abide by all laws of the Ho-Chunk Nation, which includes the TERO Ordinance;” 4) “Cash Systems, Inc. may or may not have been notified of the existence of the TERO Ordinance during the process of negotiation of a contract ...;”[9] and 5) “accep-tanee of the work force ... at each of the Ho-Chunk Nation’s gaming facilities left the Defendant with personnel who were knowledgeable of the TERO Ordinance.” Decision Order at 1-2.
lb. Respondent’s legal basis for its decision: “Cash Systems!,] Inc. has ... been non-compliant in its contract with the Ho-Chunk Nation,” and it cannot “plead ignorance to the Ho-Chunk Nation’s TERO Ordinance.” Id.
h.“No certified Indian-owned firms and no not-certified [sic ] Indian-owned firms were given an opportunity to bid on the contract that eventually was awarded to Cash Systems,” and this “circumvent[ed] the Ordinance’s ... policy requiring preference be given to Indians, Indian-owned economic enterprises and Indian organizations.” Am. Compl. at 4, paras. 37-38.
la. Respondent’s factual findings on this issue: none.
lb. Respondent’s legal basis for its decision: “Cash Systems!,] Inc. did sign a valid contract with the Ho-Chunk Nation....” Decision Order at 1.
7. Regarding Ms. Lowe-Ennis’s personal request for relief, the respondent declared, without any analysis, that it could not “rule on the Plaintiffs re-in-statement, back pay or any bonuses.” Id. Presumably, the respondent reached this decision due to its seemingly unfounded conclusion that Ms. Lowe-Ennis was a core crew member.[10] The respondent im *318 posed the following sanction upon Cash Systems: ‘‘a monetary fine of Two-Hundred and Fifty dollars/no cents ($250.00) per day for the 20 days, August 8-28, 2003 in which [Cash Systems] was in: non-compliance.” Id. at 2. The respondent made no mention of the alleged unlawful hire of another tribal member within its Decision Order. See Am. Compl. at 4, para. 43.
DECISION
The Constitution demarcates the spheres occupied by the co-equal branches of government. The General Council, ie., the People, delegated distinct powers to each branch while retaining certain powers itself. Const., Art. IV, §§ 1-2. However, these spheres of authority are not preserved inviolate, and an incursion by one branch into the sphere of another may permissibly occur without posing a constitutional problem. See Regina K. Baldwin et al. v. Ho-Chunk Nation et al., CV 01-16, -19, -21 (HCN Tr. Ct., Jan. 9, 2002) at 25. For example, the Executive Branch, acting through the President, may promulgate Executive Orders that carry the force of law within his or her administration. See, e.g., David Abangan v. HCN Dep’t of Bus., CV 01-08 (HCN Tr. Ct., July 16, 2003) at 20-22, but cf, Const. Art. V, § 2(a). The Executive Branch, acting through the DO J, may issue Attorney General Opinions that offer interpretations of the law, which serve to guide the administration. See, e.g., Timothy G. Whiteagle et al. v. Alvin Cloud, Chair of the Gen. Council CV 04-04, 5 Am. Tribal Law 178, 191, 2004 WL 5595382 (HCN Tr. Ct., Aug. 5, 2004) at 17 n.9, aff'd, SU 04-06 (HCN S.Ct., Jan. 3, 2005), but cf., Const. Art. VII, § 4. The Legislative Branch may enact laws that contain quasi-procedural rules. See, e.g., Ho-Chunk Nation v. Bank of Am., N.A., CV 02-93, 6 Am. Tribal Law 275, 292-94, 2006 WL 5882893 (HCN Tr Ct., Jan. 30, 2006) at 25-27, 31; Bonnie Smith v. Ho-Chunk Nation Gaming Comm'n CV 01-02 (HCN Tr. Ct., Feb. 27, 2001), aff'd, SU 01-02 (HCN S.Ct., June 15, 2001), but cf., Const. Art. VII, § 7(b). The Judicial Branch, acting through the Ho-Chunk Nation Traditional Court, may articulate binding law in the, form of hocati tradition and custom. See e.g., Dorothy G. Decorah v. Kim l. Whitegull, CV 02-17 (HCN Tr. Ct., Mar. 1, 2002) at 5-6; Ho-Chunk Nation v. Ross Olsen, CV 99-81, 2 Am. Tribal Law 299, 307-08, 2000 WL 35716348 (HCN Tr. Ct., Sept. 18, 2000) at 13-14, bid cf., Const. Art. V, § 2(a).
In contrast to the above examples, the instant case involves one branch’s delegation of authority to another, which at first glance seems to intrude into the province of a third branch Nonetheless, the delegation of authority does not offend the separation of powers principle, and equates with the federal administrative agency model. Const., Art. Ill, § 3; see also generally Baldwin, CV 01-16, -19, -21 at 13-18, 21-23. The Constitution imparts the duty to interpret law to the Judiciary, and the duty to create law to the Legislature. Const., Arts. V, § 2(a), VI, § 4. The Legislature, however, may delegate its constitutional functions to the Executive Branch or a legislative sub-agency. Id., Art. V, § 2(b, x). The Legislature has performed this delegation in regards to the TERO Commission, and the Commission promulgates legislative rules through formal on-the-record adjudication. TERO, Art. XXII, § 6(e-f>. Therefore, when the Court defers to a TERO Commission interpretation, it is not surrendering its constitutional obligation to interpret the law7. Rather, the Court defers to the resulting *319 legislative rule, which, in terms of a simplistic analogy, is comparable to an amendment to a statute’s definitional section.
The parties correctly acknowledge the Court’s standards of review of agency action, and the Court will not repeat the analysis here. See Baldwin, CV 01-16, - 19, -21 at 13-18, 21-23 The Legislature has pronounced that “[t]he Court shall not set aside or modify the official actions of the Commission unless it finds the actions to be arbitrary and capricious, unsupported by substantial evidence or contrary to law.” TERO, Art. XXV, § 2(e). The Court is committed to applying this manner of deferential review to any TERO Commission decision and order, but, first, the Commission must satisfy its statutory obligations. The Court cannot defer to an agency adjudicative decision that fails to include basic statutorily required components. TERO, Art. XXIII, § 11(b). While the Court remains cognizant of its obligation to “examine the evidence supporting the decision against ‘the record in its entirety, including the body of evidence opposed to the [agency’s] view,’ ” Baldwin, CV 01-16, -19, -21 at 15 (quoting Universal Camera Corp. v. Nat. Labor Relations Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)), “[t]he agency must articulate a ‘rational connection between the facts found and the choice made.’ ” Id. (quoting Bowman Transp. v. Ark.-Best Freight Sys., 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). In large part, the Court remains entirely unaware of the agency’s view.
As indicated in the Findings of Fact, the TERO Commission completely failed to address the majority of the complainant’s issues within its Decision Order.[11] As a result, the petitioners have advocated conflicting factual accounts to the Court due to the dearth of agency factual findings. See, e.g.. Reply of Pl. Cash Systems at 1-10; Reply to Br. of Resp’t TERO Comrn’n at 4-13. The Commission must perform credibility determinations as the fact-finder. The Court shall not perform the functions of the administrative agency regardless of the degree of difficulty inherent in a given case.
The only issue receiving a slight analysis concerned Cash System’s failure to pay appropriate fees. TERO, Art. VIII, §§ 1(a)(2), 3(a). The TERO Commission concluded that Cash Systems could not plead ignorance of the law.[12] Decision Order at 1-2. Yet, the TERO Commission *320 based its fine assessment upon dates that appear nowhere within the evidentiary record, and it later recognized this error.[13] Reply Pr. of Pl. Cash Systems at 24; Defs Resp. to Pls.’ Initial Briefs at 16. This represents a stark example of arbitrary agency action; the determination bears no rational relationship to known facts.
BASED UPON THE FOREGOING, the Court reverses the Decision Order and remands the instant case to the TERO Commission with directions to fulfill its statutory obligations. In doing so, the Commission must examine whether the complainant presented & prima forte case on each independent cause of action, and, if not, the reasons why she failed to meet this initial burden.[14] TERO, Aet. XXIII, § 7(a). The Commission must similarly examine the other stages within the established burden of proof. Id., l(a-b). The resulting amended decision and order must contain relevant findings of fact and a discussion concerning how those facts, in conjunction with applicable law, form the legal bases of the Commission’s determinations on the identified causes of action.[15] The Court requests that the Commission inform it of the timeframe in which it believes it can accomplish adherence with this judgment The Commission shall file such notice within fifteen (15) days of the issuance of this decision.

. The parties later mutually agreed to revise the scheduling order by extending some of the filing deadlines Stipulation to Amend Scheduling Order, CV 04-06-07 (July 26, 2004).

. The administrative record consisted of twenty-five (25) exhibits, totaling 163 pages of documentary evidence. The respondent earlier filed its two (2) page December 12, 2003 Decision Order [sic ] and 274 page hearing transcript. Answer of TERO Comm’n, CV 04-07 (Feb. 16, 2004), Attach. ,A-B.

.After the initiation of these consolidated appeals, the Ho-Chunk Nation Supreme Court (hereinafter Supreme Court) preliminarily adopted Ho-Chunk Nation Rules of Civil Procedure, Rule 63 entitled, Judicial Review of Administrative Adjudications, in which the parties are designated as petitioner(s) and respondents). Final approval including potential modifications, should occur in or around February 2006.

. The presiding judge extends his sincerest apologies to the parties for the failure of the Court to enter a timely decision in this matter. Each trial judge maintains a duty to "dispose promptly of the business ol the court." HCN Rules of Judicial Ethics, § 4-HE); see also In the Matter of Timelv Issuance of Decisions, Admin. Rule 04-09-05(1) (HCN S. Ctr., Apr. 9, 2005) (requiring issuance of final judgments within ninety (90) days following completion of trial level process). Former Chief Judge William H. Bossman tailed in this regard by not issuing a judgment prior to the expiration of his legislative appointment on July 1, 2005. In the interests of justice, the Court informs the parties of the availability of seeking mandamus relief from the Supreme Court in order to compel action of a trial level judge. See In re: Casimir T. Ostrowski, SU 05-01 (HCN S.Ct., Feb. 21, 2005) (citing Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. VII, § 6(a)).

. The TERO confers standing upon “Lajny interested person” to initiate an administrative action. TERO, Art. XXIII, § l(a, c).

. The ordinance identifies the TERO Commission's final administrative judgment as the decision and order. TERO, Art. XXIII, § 11.

. : The respondent has an obligation to “set forth the factual findings and legal basis for [its] decision” within the resulting decision and order. TERO, Art. XXIII, § 11(b).

.The respondent did not expressly establish whether Ms. Lowe-Ennis constituted a “regular, permanent employee ... in a supervisory or other key position who performs a critical function such that the employer would likely face serious financial damage or loss if that task were assigned to a person who had not *317 previously worked for the contractor.” TERO, Art. IV, § 1(f).

. Obviously, this factual finding proves of little value since the respondent declined to draw a conclusion.

. The respondent subsequently ignored the stated basis for its determination, instead focusing upon statutory language that seems to suggest that an employee may only grieve an involuntary termination resulting from a "decreased workload,” which did not occur in *318 the instant case. Def.’s Resp. to P/s.’ Initial Briefs at 7-8 (citing TERO, Art. X, § 2(a)).

. As noted above, the TERO Commission appeared to dispense with a number of issues by simply identifying Ms Lowe-Ennis as a core crew member without any of the necessary accompanying analysis. Cash Systems later adopted the Commission’s argument that it could terminate Ms. Lowe-Ennis without cause because the TERO did not elevate tribal employees beyond an at-will status. Reply Br. of PI. Cash Systems at 12-17. The Court preliminarily finds this reasoning unpersuasive. The argument ignores the provision, which states: "Nothing in this Section shall preclude an employer for [sic 1 terminating a Ho-Chunk member ... from being laid off for cause." TERO, Art. X, § 2(d). To be sure, the drafting of this provision leaves much to be desired. Still, the TERO accordingly views a termination for cause as disassociated and separate from Article X, and its interplay with the re employment list. Id., Art. XI, § 1(a). To deem otherwise would permit covered employers to render the preference provisions toothless and eviscerate a significant purpose of the TERO. Id., Arts. I, § 1 (a)( 1 —3), VI, § 1, VII, § 1(a) A similar "for cause” provision within the former Ho-Chunk Nation Personnel Policies & Procedures Manual served as the foundation for recognizing a property right in tribal employment and the consequent judicial development of its procedural due process jurisprudence. Lonnie Simplot et al. v. Ho-Chunk Nation Dep’t of Health CV 95-26-27, 96-05 (HCN Tr. Ct., Aug. 29, 1996) at 17-19.

. In other civil actions, the Court charges litigants with constructive knowledge of the Nation's laws. See Susan Bosgraff v. HCN Sec. Dep’t., CV 01-01 (HCN Tr. Ct., Aug. 6, *320 2001) at 9 (citing Jean Day et. al. v. Pers. Dep't, CV 96-15 (HCN Tr. Ct., Aug. 21, 1996) at 3, 6). Furthermore, the Supreme Court subsequently recognized this principle. Marie WhiteEagle v. Wisconsin Dells Head Start et al., SU 01-14 (HCN S.Ct., Nov. 27, 2001) at 2 (agreeing that a plaintiff “bears the responsibility of knowing the governing laws of the Nation,”). In the case at bar, Cash Systems voluntarily agreed to the incorporation of governing law clauses within its contractual agreements TERO Comm'n Hr'g, Ex. 6 at 7, 15.

.The TERO Commission seemed to justify the amount of its sanction upon the complicit actions of other entities/individuals. Compare TERO, Arts. VIII, §§ 1(a)(2), (b), 3(a, d-e), XII, § 2(a), XV, § l(a-b), with Aris VIII, §§ 4(a-b), 5(a-b), XII, § 2(b), XIII, § 1(a), XIV, § 'l(a-b), XXI, § 3(a)( 1, 4, 6-7, 12, 16), XXII, § 6(a). If so, the Commission never expressly stated as much. In the context of employment cases, the Supreme Court has broadly recognized that ‘jajdherence to the Nation's [lawsj is both the responsibility of the [employee and employer,]” but has never dictated the consequences of a failure by the employer. Sandra Sliwicki v. Ho-Chunk Nation: Rainbow Casino et al, SU 96-15 (HCN S.Ct., June 20, 1997) at 4 (criticizing the absence of timely employer responses within the Administrative Grievance Process).

. The Court previously reversed and remanded an administrative agency appeal since the agency improperly shifted the burden of establishing a prima facie case. Ralph H. Babcock et al. v. HCN Gaming Comm'n CV 01-87, -96 (HCN Tr, Ct., Jan. 14, 2002).

. The Court also directs the TERO Commission to explain its decision to deny Cash System’s discovery request. Initial Br. of Pi, Cash Systems at 8-10. The TERO provides parties the "right to present witnesses, documents, and records.” TERO, Art: XXIII, § 3(a)(3); see also id., Arts. XXII, § 6(e), XXIII, §§ 5(a), 8(a), 9(a, e-f). Nonetheless, the Court doubts whether Cash Systems can legitimately claim that it does not meet the broad definitions of "covered employer” and “vendor.” Id., Art, IV, § 1(g, m-n, z, dd).